**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **FALLON'S DOOR WORKS NO. 2, INC., an Arizona Corporation doing business as DOOR WORKS** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **2:09-cv-00213 JWS** |
| **vs.** | ) ) | **ORDER AND OPINION** |
| **EX-FACTORY, INC, a foreign corporation, and TIM BARNES and JANE DOE BARNES, citizens of the State of Arizona,** | ) ) ) ) | **[Re: Motion at Docket 69]** |
| **Defendants.** | ) ) ) ) | |

## I. MOTION PRESENTED

At docket 69, defendants Ex-Factory, Inc. and Tim Barnes move for summary judgment dismissing with prejudice all of plaintiff's claims and plaintiff's request for consequential damages pursuant to Federal Rule of Civil Procedure 56. At docket 75, plaintiff Fallon's Door Works, Inc. opposes the motion. Defendants reply at docket 78. Oral argument was requested, but it would not assist the court.

## II.  BACKGROUND[1]

This dispute arises out of the sale of a router labeled as a "Shoda Apex CNC Router" ("the Router").[2]  Scottsdale Millworks purchased the Router in 2002 and used it to make wood products until September 2006, when it wound down its business and retained Ex-Factory to liquidate its woodworking equipment, including the Router. Sometime in 2006, Tim Barnes, an Ex-Factory representative, approached Dennis and Michael Fallon to see if they were in interested in purchasing a Shoda Apex CNC Router for sale at Scottsdale Millwork.  Dennis and Michael Fallon, own and operate Fallon's Door Works No. 2, Inc. ("Door Works"), which has gross annual sales of approximately $3.5 million.

After looking at the Router while it was at Scottsdale Millworks, Michael Fallon offered to purchase the Router for $125,000.[3]  Barnes responded that anything less than a full price offer was unacceptable, the machine being a Shoda CNC Router was worth the full asking price, and the Router had barely been used at Scottsdale Millworks.  Fallon agreed on behalf of Door Works to pay the asking price of $178,000 for the Router.  Barnes knew when he sold the Router that it was manufactured by Essetre, not Shoda.

---

[1]The background facts in this section are undisputed unless otherwise indicated and are taken from the parties' statements of fact and the documents at issue in this action.

[2]The parties alternatively refer to the Router as a "SHODA" or "Shoda."  Both forms are used herein.

[3]The parties dispute whether the Router was operating or disassembled at the time Michael Fallon looked at it prior to purchase.

In October 2006, Ex-Factory sold the Router to TCF Equipment Finance, Inc.

("TCF"), an affiliate of SCM Group Leasing, which leased the Router to Door Works.

An Invoice dated October 11, 2006, indicates that Ex-Factory sold TCF a used 2004

Shoda Apex CNC Router for $179,000, and the Router was to be shipped to Door

Works.  The Invoice lists the condition of the Router as "2004, Very good condition, as

inspected by Door Works with acceptance of machine condition."[4]  The Invoice further

provides,

> The equipment, machinery or material covered by this Invoice is sold "as is,
> where is, and with all faults" with no guarantee or warranty as to condition,
> merchantability or fitness for a particular purpose, implied or otherwise.  The
> "Sold To" party/buyer accepts that this sale is subject to our "Standard Terms &
> Conditions," a copy of which is attached to this invoice...[5]

The Return Policy attached to the Invoice provides, "If goods/equipment are

significantly inferior than represented and absolutely not acceptable to CUSTOMER,

SELLER will immediately refund purchase price, upon return of goods/equipment,

freight collect."[6]  The Return Policy states that it applies to "Used Machinery not

inspected by the Buyer."[7]  The Terms & Conditions of Sales, attached to the Invoice,

states in relevant part,

> LIMITED WARRANTY: All machinery is sold "as is where is" with all faults except
> when a warranty coverage is explicitly stated and with new equipment covered
> by factory warranty. Seller does warrant that all used, rebuilt and reconditioned
> machinery will be mechanically in good working order.  Seller makes no
> warranties, express or implied, as to merchantability or fitness for purpose ... It is

---

[4]Doc. 70-5 at p. 2.

[5]*Id.*

[6]*Id.* at p. 4.

[7]*Id.*

expressly agreed that the buyer shall have no right to recovery against Seller for any incidental or consequential damage arising from any breach of warranty by Seller and the Buyer shall have no right of rejection or revocation of acceptance against Seller for any part of all the goods covered hereby.[8]

On October 10, 2006, Door Works entered a finance lease ("the Lease") with TCF for the Router.  The Lease identifies Ex-Factory as the Supplier, Door Works as the Lessee, and TCF as the Lessor.  The Lease is for a term of 60 months with monthly payments of $3,660.38 and a fixed price purchase option of $1.00 at the conclusion of the lease term.[9]  The Lease states in pertinent part,

> 2.  NO WARRANTIES.  We are leasing the Equipment to you "AS-IS".  YOU ACKNOWLEDGE THAT WE DO NOT MANUFACTURE THE EQUIPMENT, AND YOU HAVE SELECTED THE EQUIPMENT AND SUPPLIER BASED UPON YOU OWN JUDGMENT.  WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE.  YOU AGREE THAT REGARDLESS OF CAUSE, WE ARE NOT RESPONSIBLE FOR AND YOU WILL NOT MAKE ANY CLAIM AGAINST US FOR ANY DAMAGES, WHETHER CONSEQUENTIAL, DIRECT, SPECIAL, OR INDIRECT.  We transfer to you for the term of this Lease any warranties made by the manufacturer or Supplier under a Supply Contract.[10]

On October 25, 2006, Door Works accepted delivery of the Router.  Michael Fallon signed a Delivery & Acceptance Form from TCF, which stated in pertinent part:

> Lessee hereby represents, warrants and certifies that (i) all of the Equipment has been delivered to Lessee at the Equipment Location set forth in the Lease and has been installed, tested and inspected by Lessee or duly authorized representatives of Lessee, (ii) the Equipment Description set forth in the Lease is complete and correct, (iii) the Equipment is exactly what Lessee ordered, is in

---

[8]*Id.* at p. 3.

[9]Doc. 70-6 at p. 2.

[10]*Id.* at p. 3.

good working order, is satisfactory in all respects and has been accepted by lessee under the Lease as of the Acceptance Date set forth below.[11]

The Delivery and Acceptance form is not dated and does not identify a lease number. Michael Fallon contends that the Router was not assembled when he signed the Delivery and Acceptance form.

After accepting delivery of the Router, Door Works proved "unable to program or operate the [Router] on any reasonably commercially acceptable basis," spent approximate $92,000 in repair attempts, and "incurred lost production and sustained loss of profits because the [Router] did not work."[12]  By letter dated September 25, 2008, Door Works demanded that Ex-Factory accept the return of the Router, refund the purchase price, and pay the freight costs to return the Router on the grounds that the Return Policy provided for the return of "inferior goods and equipment."[13]   Door Works stated that the Router was significantly inferior than represented by Ex-Factory and was not manufactured by Shoda as represented.

By letter dated October 3, 2008, Ex-Factory declined Door Work's request for return and refund, stating that as evidenced by the Invoice, Door Works had inspected the Router prior to purchase and accepted the Router's condition "as is."  Ex-Factory noted that almost two years had elapsed since Door Works received the Router and there was no record of any deficiencies with the Router, other than a $1,000 refund for "software and computer training issues."  Ex-Factory further stated that it is "not

---

[11]Doc. 70-11 at p. 2.

[12]Doc. 70 at p. 3.

[13]Doc. 76-9 at p. 2.

responsible for Shoda's usage of their brand name on equipment manufactured by another company."[14]

On October 16, 2008, Door Works filed a complaint against Ex-Factory and Tim Barnes in the Superior Court of the State of Arizona.  Door Works' complaint alleges the following causes of action: common law fraud, breach of contract, right to rescission, breach of the covenant of good faith and fair dealing, breach of warranty and negligent representation. Barnes is only named in the claims for common law fraud and negligent misrepresentation. Door Works' prayers for relief seek rescission and restitution of repair costs or unspecified monetary damages, punitive damages, and consequential damages for lost profits.  Ex-Factory and Barnes timely removed this action to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Ex-Factory and Barnes now move to dismiss all of Door Work's claims with prejudice.  Door Works opposes the motion.

### III.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law.  The moving party has the burden to show that material facts are not genuinely disputed.[15]  To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but

---

[14]Doc. 76-10 at p. 2.

[15]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

need not produce evidence negating that claim.[16]   Once the moving party meets its

burden, the nonmoving party must demonstrate that a genuine issue of fact exists by

presenting evidence indicating that certain facts are disputed so that a fact-finder must

resolve the dispute at trial.[17]   The court views this evidence in the light most favorable to

the nonmoving party and draws all justifiable inferences from it in favor of the

nonmoving party.[18]

## IV.  DISCUSSION

**Common Law Fraud**

Plaintiff's common law fraud claim alleges that defendants Ex-Factory and

Barnes made the following misrepresentations about the Router:

> A.  The manufacturer of the equipment was represented to be ... SHODA, a well known Japanese based manufacturer of equipment, with a history and reputation of manufacturing machines that are capable of working at high rates for many years.

> B.  Defendants represented to Plaintiff that the SHODA manufactured equipment was being purchased at half price of a newly manufactured SHODA machine, was almost brand new and was completely set up with tooling to operate.

> C. The machinery was represented to be manufactured in 2004.

> D.  On the outside of the machine prominently displayed and visible was a sticker showing "SHODA."[19]

---

[16]*Id.* at 325.

[17]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[18]*Id.* at 255; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006).

[19]Doc. 1 at pp. 13-14

Plaintiff's complaint further alleges that the representations were false because defendants knew the Router was manufactured by Essetre, an Italian company with virtually no distribution or service in the United States; was manufactured in 2002, not 2004; and "was incapable of being operated with the tooling and programing installed on the SHODA Router."[20]  Plaintiff further alleges that defendants intended plaintiff to rely on their representations in the manner contemplated because the photos, product literature, invoice, and sales staff represented the equipment to be a 2004 Shoda Apex CNC Router.  In addition, plaintiff contends it had the right to rely and did rely on defendants' representations because defendants are in the business of selling woodworking machinery and equipment and are knowledgeable in this business.

"A claim for fraud requires proof of nine elements by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's consequent and proximate injury."[21]  Defendants argue that they are entitled to summary judgment on plaintiff's fraud claim because there is no evidence that defendants intended to misrepresent any aspect of the Router or that they intended Door Works to rely on any misrepresentation about the Router.

---

[20]Doc. 1 at p. 15.

[21]*Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033-1034 (Ariz.App. 2010).

-8-

"The burden of persuasion on the summary judgment motion is heavy. '[W]here the evidence or inferences would permit a jury to resolve a material issue in favor of either party, summary judgment is improper.'  Further, a court must view the evidence in a light most favorable to the non-moving party and draw all justifiable inferences in its favor."[22]

With respect to intent, plaintiff attaches evidence that defendants advertised the Router as a 2004 Shoda Apex CNC Router even though defendants knew the Router was manufactured by Essetre and labeled as a Shoda under a private labeling agreement.  Plaintiffs also argue and defendant admits that defendant Barnes informed Door Works that the Router "being a Shoda CNC Router was worth the full asking price."[23]  Plaintiff further contends that the purpose of representing the Router as manufactured by Shoda was to capitalize on the reputation of Shoda.

Defendants argue that the evidence shows that they never refused plaintiff access to the Router and that in addition to the prominent Shoda label, the Router also has the label "Essetre" in two locations.  Defendants also contend that the record shows that  the Router had a Essetre nameplate affixed to it when plaintiffs first took possession of the Router.  Plaintiff, who admits it has now located an Essetre nameplate on the Router, contends it "has no firsthand knowledge of whether this nameplate was affixed when it first took possession of the subject Router, because it

---

[22]*Comerica Bank*, 229 P.3d at 1034 (quoting *Nat'l Bank of Ariz. v. Thruston*, 180 P.3d 977, 981 (Ariz.App. 2008) (internal citations omitted).

[23]Doc. 76 at p. 3.

was not in an obvious and apparent location."[24]  Mike Fallon states that he did not learn the Router was not manufactured by Shoda until 2007 when he contacted a Shoda service provider about installing the Router and the service provider declined to work on the Router because it was made by Essetre, not Shoda.[25]

Based on the evidence, a reasonable jury could find that defendants affirmatively marketed the Router as manufactured by Shoda in 2004, and that defendants intended plaintiff to rely on the above representations in order to maximize the sale price of the Router.  However, a reasonable jury could also find that defendants did not intend plaintiff to rely on the representation that the Router was manufactured by Shoda because the label Essetre was also located on the Router.  The jury could conclude that although defendants knew the Router was manufactured by Essetre and did not affirmatively disclose this information to plaintiff, defendant did not intend plaintiff to rely on the representation because the information was available to plaintiff upon careful inspection of the Router.

Because reasonable jurors could reach different conclusions as to whether defendants intended plaintiff to rely on the representation that the Router was manufactured by Shoda in 2004, summary judgment in favor of defendant is improper.[26] In their reply brief, defendants argue for the first time that because Shoda sold the Router under its brand name, "it is, therefore, legally a Shoda," and there was no

---

[24]Doc. 70-7 at p. 6.

[25]Doc. 76-1 at p. 4.

[26]*Comerica Bank*, 229 P.3d at 1035.

misrepresentation.  Because this argument was raised in defendants' reply and plaintiff has not had the opportunity to respond, the court does not address defendant's argument.  Furthermore, because defendant does not address the remaining seven elements to establish a claim of fraud, the court declines to analyze the remaining elements.

**Breach of Contract and Rescission Claims Against Ex-Factory**

Plaintiff's breach of contract claim alleges that defendant Ex-Factory breached its agreement to provide a Shoda manufactured router as represented to plaintiff. Plaintiff's complaint further alleges that the failure to provide a Shoda manufactured router "represents a substantial failure of consideration" because plaintiff bargained for a Shoda manufactured router due to Shoda's reputation as "the maker of superior woodworking machinery usable commercially for a long life, fully distributed and supported in the United States, with parts, service, and computer programming."[27]

Defendant argues that plaintiff's claims for breach of contract and rescission of contract fail as a matter of law because plaintiff cannot prove the formation of a contract.  "It is well established that, in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages."[28]

Plaintiff admits that it did not have a written contract or agreement with Ex-Factory.  Instead, plaintiff relies on the "contract" between Ex-Factory and TCF, which

---

[27]Doc. 1 at p. 17.

[28]*Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz.App. 2004); *see also, Clark v. Compania Ganadera de Cananea*, S.A., 387 P.2d 235, 238 (Ariz. 1963).

plaintiff alleges consists of the Invoice and its attachments.  Plaintiff argues  that as a

lessee under a financial lease it is a beneficiary of the supply contract between Ex-

Factory and TCF pursuant to A.R.S. § 47-2A209(A), which provides,

> The benefit of a supplier's promises to the lessor under the supply contract and
> of all warranties, whether express or implied, including those of any third party
> provided in connection with or as part of the supply contract, extends to the
> lessee to the extent of the lessee's leasehold interest under a finance lease
> related to the supply contract, but is subject to the terms of the warranty and of
> the supply contract and all defenses or claims arising therefrom.

Citing *Farm & Auto Supply v. Phoenix Fuel Co., Inc.*,[29] defendant argues that

plaintiff cannot meet its burden of proving the existence of a contract because as a

matter of law, an invoice is not a contract.  In *Farm & Auto Supply*, a seller sought to

recover attorney's fees and costs involved in collecting from a buyer.  The evidence

demonstrated that the seller and buyer reached some form of agreement as to price

and terms of payment prior to the delivery of merchandise in question, and that the

merchandise was sold and delivered on an open account in accord with the

agreement.[30]  Because no contract contained an attorney's fee provision, the seller

claimed that invoices submitted to the seller amounted to individual contracts providing

for the payment of attorney's fees.  The Arizona Supreme Court held that where none

of the invoices containing attorney's fees provisions were signed by the buyer, and

some of the invoices were signed by employees who it was not proven had authority to

make an agreement regarding attorney's fees, "the mere signing by such employees of

some of such invoices, does not constitute a binding contract of the buyer to pay

[29]442 P.2d 88 (Ariz. 1968).

[30]*Farm & Auto*, 442 P.2d at 90.

-12-

attorney's fees as provided in the invoices."[31]  The court reasoned that "[a]n invoice ... is no contract.  An invoice is a mere detailed statement of the nature, quantity and the cost or price of the things involved."[32]

Here, as in *Farm & Auto*, the Invoice is not signed by either Ex-Factory or TCF and simply states the nature, quantity and price of the Router.  Without citing any authority, plaintiff contends that "[n]o matter the label on a document, if the document clearly memorializes the terms the parties agreed upon, that document is a contract."[33] The court and case law disagree.  Rather, "for an enforceable contact to exist there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained."[34]  Plaintiff has not provided the requisite evidence of a contract between Ex-Factory and TCF.

The court's role "is not that of contract maker; [the court] merely give[s] legal effect to bargained for contractual relations."[35]  Because plaintiff has failed to meet its burden of establishing the existence of a contract, defendant is entitled to summary judgment on plaintiff's breach of contract claim.  Furthermore, because plaintiff fails to establish the existence of a contract, its claim for rescission of contract necessarily fails and is dismissed.

---

[31]*Id.* at 93.

[32]*Id.* at 92.

[33]Doc. 75 at p. 9.

[34]*Savoca Masonry Co., Inc. v. Homes & Son Const. Co., Inc.*, 542 P.2d 817, 819 (Ariz, 1975).

[35]*Id.* at 820.

**Breach of Covenant of Good Faith and Fair Dealing**

Plaintiff's breach of the covenant of good faith and fair dealing claim alleges that defendant's misrepresentations impaired plaintiff's right to "receive the benefits of the use of an actual Shoda made Router, which benefits would have normally flowed from the lease agreement and purchase agreement of an actual Shoda made Router."[36] "The law implies a covenant of good faith and fair dealing in every contract."[37] "The duty arises by virtue of a contractual relationship."[38]  The essence of that duty is that neither party will act to impair the right of the other to received the benefits which flow from their agreement or contractual relationship."[39]  Because plaintiff has failed to establish the existence of an enforceable contract between Ex-Factory and TCF, plaintiff cannot establish a claim for the breach of the covenant of good faith and fair dealing, which arises out of a contractual relationship.

**Breach of Warranty Claim**

Plaintiff's breach of warranty claim against Ex-Factory alleges that defendant made "implicit and explicit" warranties to plaintiff concerning the Router, including that the Router was manufactured by Shoda in 2004 and that the "so-called Shoda Router" was suitable for plaintiff's business purpose and was ready to use on a commercial basis for plaintiff's business.

---

[36]Doc. 1 at p. 18.

[37]*McAlister v. Citibank (Arizona)*, 829 P.2d 1253, 1259 (Ariz.App. 1992).

[38]*Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986)

[39]*Id.*

Under Arizona law, privity of contract is required to maintain an action for breach of express warranties by affirmation, promise, description under A.R.S. § 44-2330 and for breach of implied warranties of merchantability under A.R.S. § 44-2331."[40] Accordingly, plaintiff must show that privity of contract existed between it and Ex-Factory.  Plaintiff cannot do so because TCF bought the Router from Ex-Factory and TCF leased the Router to plaintiff.  Moreover, even assuming the Invoice was a contract between Ex-Factory and TCF and that Door Works was a beneficiary of that contract, the Invoice explicitly states that "Seller makes no warranties, express or implied, as to merchantability or fitness for purpose" and that "Seller is not responsible for any express or implied warranties made by the manufacturer."[41]  For the above reasons, defendant is entitled to summary judgment as a matter of law on plaintiff's breach of warranty claim.

**Negligent Misrepresentation against Ex-Factory Defendants**

"Arizona recognizes the tort of negligent representation," which is "committed by the giving of false information intended for the guidance of others and justifiably relied upon by them causing damages if the giver of the false information fails to exercise reasonable care or competence in obtaining or communicating the information."[42]

---

[40] *Flory v. Silvercrest Industries, Inc.*, 633 P.2d 383, 387 (Ariz. 1981); *Chaurasia v. General Motors Corp.*, 126 P.3d 165, 171 (Ariz.App. 2006).

[41] Doc. 70-5 at p. 3.

[42] *St. Joseph's Hosp. and Medical Center v. Reserve Life*, 742 P.2d 808, 813 (Ariz. 1987) (internal citation and quotation omitted).

Plaintiff's complaint alleges that defendants in the course of business supplied false information for the guidance of plaintiff, resulting in the purchase of the Router and the lease of the same by plaintiff.  Plaintiff further contends that the false information was important in determining whether to proceed with the purchase and lease of the Router, defendants had a pecuniary interest in the transaction and failed to exercise reasonable care and competence in communicating information to plaintiff, and plaintiff justifiably relied on the information received from defendant. Plaintiff's negligent misrepresentation claim does not allege any secondary property damage or personal injury resulting from the Router's sale or use.

Defendants first contend that plaintiff's negligent misrepresentation claim fails as a matter of law because there was no privity of contract between plaintiff and Ex-Factory.  Defendants' argument is unavailing because Arizona case law recognizes that a duty to exercise reasonable care when supplying information about a commercial matter exists notwithstanding a lack of privity between the parties.[43]

Defendants next argue that plaintiff's negligent misrepresentation claim is barred by the economic loss rule because plaintiff admits that its alleged damages are strictly economic in nature.  The economic loss rule limits a "contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to person or other property."[44]  However, because plaintiff has not been deemed a

---

[43]*Mur-Ray Management Corp. v. Founders Title Co.*, 819 P.2d 1003, 1009 (Ariz. App. 1991) (relying on *Arizona Title Ins. and Trust Co. v. O'Malley Lumber Co.*, 484 P.2d 639 (1971)).

[44]*Flagstaff Affordable Housing Ltd. Partnership v. Design Alliance, Inc.*, 223 P.3d 664, 667 (Ariz. 2010).

contracting party, the economic loss rule would not bar plaintiff from recovering against defendants for defendants' alleged negligent misrepresentation.[45]  "[W]hether a non-contracting party may recover economic losses for a defendant's negligent misrepresentation should depend on whether the elements of that tort are satisfied, including whether the plaintiff is within the limited class of persons to whom the defendant owes a duty."[46]  The court does not address whether the elements of the tort of negligent misrepresentation are satisfied in this matter because the parties have not briefed the issue.  For the above reasons, defendants are not entitled to summary judgment on plaintiff's negligent misrepresentation claim.

**Consequential Damages**

Finally, defendants move for summary judgment dismissing plaintiff's request for consequential damages.  Defendants contend that because the Invoice disclaims liability for all consequential damages resulting from alleged breaches of warranty, plaintiff's request for consequential damages should be dismissed.   However, consequential damages are also recoverable in actions for fraud and negligent misrepresentation provided the consequential damages are shown to be proximately cause by the misrepresentation.[47]  Accordingly, defendants are not entitled to summary judgment dismissing plaintiff's request for consequential damages.

---

[45] *Id.* at 671; *Colson v. Maghami*, 2010 WL 2744682, *7 (D.Ariz. July 9, 2010).

[46] *Flagstaff*, 223 P.3d at 671-672.

[47] *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 347 (Ariz.App. 1996).

**V.  CONCLUSION**

For the reasons set out above, defendants' motion at docket 69 is **GRANTED IN PART** and **DENIED IN PART** as follows:  Defendants' motion is granted as to plaintiff's claims for breach of contract, rescission of contract, breach of the covenant of good faith and fair dealing, and breach of warranty, and denied as to plaintiff's claims of fraud and negligent misrepresentation and request for consequential damages based on those theories.

DATED this 5th day of October 2010.


_____/S/_____
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE